DAVID W. DRATMAN, SBN 78764
ATTORNEY AT LAW
601 University Ave, Suite 145
Sacramento, CA 95825
Telephone:   (916) 443-2000
Fax:         (916) 443-0989
E-Mail:      dwdratman@aol.com

DAVID D. FISCHER, SBN 224900
LAW OFFICES OF DAVID D. FISCHER, APC
5701 Lonetree Blvd. Ste 312
Rocklin, CA 95765
Telephone:   (916) 447-8600
Fax:         (916) 930-6482
E-Mail:      david.fischer@fischerlawoffice.com

Attorneys for Defendant
TIMOTHY ALLEN HORWATH

# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TIMOTHY ALLEN HORWATH,<br><br>Defendant. | Case No.: 2:19-CR-00216 JAM<br><br>**DEFENDANT TIMOTHY ALLEN HORWATH'S SENTENCING MEMORANDUM**<br><br>Date:   September 26, 2023<br>Time:   9:00 a.m.<br>Judge:  Hon. John A. Mendez |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     PRELIMINARY STATEMENT

Defendant TIMOTHY ALLEN HORWATH, stands before this Court, having plead guilty to a violation of 18 U.S.C. § 2252(a)(2) – Receipt of Child Pornography, pursuant to an "open plea." According to the PSR, the guideline range is 121–151 months imprisonment. The probation department has recommended a sentence of 121 months. For the reasons stated herein, the defendant requests the Court grant a variance downward to 60 months, which is the mandatory minimum sentence for this offense.

## II.    18 U.S.C. § 3553(a) SUPPORTS A SUBSTANTIAL VARIANCE

The Court's task in sentencing is to identify and "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). Although the Sentencing Guidelines are the starting point for the calculation of an appropriate sentence, a district court "may not presume that the Guidelines range is reasonable." *Gall v. United States*, 552 U.S. 38, 50 (2007). Instead, the Court "must make an individualized assessment based on the facts" of each case, recognizing that a within-Guidelines sentence may be greater than necessary to serve the purposes of sentencing. *Id.*; *Kimbrough v. United States*, 552 U.S. 85, 91 (2007); *see United States v. Gupta*, 904 F. Supp. 2d 349, 350 (S.D.N.Y. 2012) ("Imposing a sentence on a fellow human being is a formidable responsibility. It requires a court to consider, with great care and sensitivity, a large complex of facts and factors."). Indeed, the Court "may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines." *Kimbrough*, 552 U.S. at 101.

The Court must make an assessment of what sentence is reasonable based on all the  factors, including: (1) the nature and circumstances of the offense and history and characteristics of the defendant; (2) the purposes of sentencing, including the need for deterrence and to protect the public; (3) the kinds of sentences available; (4) the Sentencing Guidelines; (5) any relevant policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities; and (7) the need to

provide restitution to any victims of the offense. 18 U.S.C. § 3553(a). "[T]he amount by which a sentence deviates from the applicable Guidelines range is not a measure of how 'reasonable' a sentence is. Reasonableness is determined instead by the district court's individualized application of the statutory sentencing factors." *United States v. Dorvee*, 616 F.3d 174, 184 (2d Cir. 2010) (citing *Gall*, 552 U.S. at 46-47). These factors support a sentence of imprisonment of 60 months.

### A.   The Nature and Circumstance of the Offense

The crime for which Mr. Horwath is being sentenced is for obtaining, viewing, and retaining on his computer and cell phone, child pornography.  His actions were discovered as a result of an investigation prompted by the tracing of an IP address which was associated to him. In 2019, law enforcement executed a search warrant and he was found in receipt of approximately 3,000 photo images and 374 videos depicting child pornography that were downloaded to his computer and cell phone.

Mr. Horwath acknowledges that his actions were wrong, he is remorseful for his conduct, and he accepts responsibility for his actions.

### B.   The History and Characteristics of the Defendant

Mr. Horwath is 53 years old. His parents were divorced.  He was raised by both of his parents and their spouses.  Mr. Horwath was abused by an elderly neighbor between the ages of 8 and 10, and only recently shared the events with others.  He has participated in mental health counseling as directed by Pretrial Services, and will continue to do so upon release.

Mr. Horwath had a 16-year career as a patrol officer with the California Highway Patrol, where he provided dedicated service to the citizens of California. He was married to his second wife for 20 years, and has a total of five children from two marriages.  As a result of his actions in this case, he has lost his marriage, lost contact with his children, and lost his career.  However, he continues to support his minor children, and he has deposited $75,000 with the Clerk of the Court to be credited toward restitution and other

monetary penalties in this case to demonstrate that he has accepted responsibility in this case.

### C. The Sentencing Guideline Fails to Provide an Appropriate Advisory Sentence for this Offense.

The United States Sentencing Commission issued a report in June 2021 that updated and expanded upon the Commission's 2012 report to congress that was highly critical of the existing child pornography guidelines. The report is entitled *Federal Sentencing of Child Pornography: Non-Production Offenses*, available at https://www.ussc.gov/research/research-reports/federal-sentencing-child-pornography-non-production-offenses.  Some of the key findings of this report relevant to this case are:

- Non-production child pornography cases increasingly involve voluminous quantities of videos and images that are graphic in nature, facilitated by advancements in digital and mobile technology.

- §2G2.2 contains a series of enhancements that have not kept pace with technological advancements. Four of the six enhancements— accounting for a combined 13 offense levels—cover conduct that has become so ubiquitous that they now apply in the vast majority of cases sentenced under §2G2.2.

- Because enhancements that initially were intended to target more serious and more culpable offenders apply in most cases, the average guideline minimum and average sentence imposed for nonproduction child pornography offenses have increased since 2005.

- Section 2G2.2 does not adequately account for relevant aggravating factors identified in the Commission's 2012 *Child Pornography Report* that have become more prevalent.

Given that the current guideline is archaic, the Commission recommends changing it, because it "places a disproportionate emphasis on outdated measures of culpability regarding offenders' collecting behavior and insufficient emphases on offenders' community involvement and sexual dangerousness." The Commission notes that its hands are tied, in many respects, because many of the current outmoded guideline

provisions were promulgated pursuant to specific congressional directives or legislation and cannot be undone without authority. *Ibid*.

It is clear that the Court may "vary [from the Guideline ranges] based solely on policy considerations, including disagreements with the Guidelines," *Kimbrough v. United States*, 128 S. Ct. 558, 570 (2007) (internal quotation marks omitted), and when it does, the courts of appeals may not "grant greater fact finding leeway to [the Commission] than to [the] district judge." *Rita v. United States*, 127 S. Ct. 2456, 2463 (2007). This would be especially true where, as here, the Commission has noted that the guideline does not adequately measure the seriousness of the offense or the offender.

Whether a judge may draw any useful advice from a guideline depends first on whether the Commission, in promulgating or amending it, acted in "the exercise of its characteristic institutional role." *Kimbrough*, 128 S. Ct. at 575. As described in *Rita*, the exercise of this role has two basic components: (1) reliance on empirical evidence of pre-guidelines sentencing practice, and (2) review and revision in light of judicial decisions, sentencing data, and comments from participants and experts in the field. *Rita*, 127 S. Ct. at 2464-65. Here, although the applicable Guideline was not promulgated based on the Commission's institutional role (since many of the increases were politically mandated, *United States v. Henderson*, 649 F.3d 955, 962 (9th Cir. 2011), the Commission's original 468-page report in 2012, intensely detailed report repudiating the section 2G2.2 guideline is based on the Commission's characteristic empirical research, data analysis, and consideration of comments from stakeholders. Accordingly, the report has much more relevance to this sentencing than the guideline should.

In considering a guideline not based on data, study, or past practice, it is not "fair to assume" that the guideline "reflect[s] a rough approximation" of sentences that "might achieve 3553(a) objectives." *Rita*, 127 S. Ct. at 2464-65. In *Henderson*, 649 F.3d at 962-63, the Ninth Circuit anticipated the Sentencing Commission's recent analysis and held that section 2G2.2 is precisely the kind of guideline deserving little deference because it is "to a large extent, not the result of the Commission's 'exercise of its characteristic

institutional role,' which requires that it based its determination on 'empirical data and national experience. . . .'" This conclusion is supported by the Commission's recent review that verifies the flaws in this politically-manipulated guideline.

A guidelines-based sentence of 121 months in this case cannot be justified under all the factors under 18 U.S.C. § 3553(a). The guidelines alone should not be relied upon by the Court in making its sentencing determination. In light of the history of the child pornography guidelines and the Sentencing Commission's report repudiating many of the adjustments, a guidelines based sentence in this case is not warranted.

*Henderson* identifies different routes to a reasonable sentence below the correctly calculated guideline range. The Court may find a case to be outside the heartland to which the Commission intends the guideline to apply. 649 F.3d at 959, citing *Kimbrough v. United States*, 552 U.S. 85, 109 (2007). Further, it may find that the range fails to properly reflect section 3553(a) considerations. *Id*. Finally, the guideline may be suspect because it has not been developed in an exercise of the Commission's institutional role and therefore does not deserve the deference it might otherwise be owed. *Id*. at 962. All of these reasons undermine a 121-month sentence in this case.

For most persons convicted of this crime, including Mr. Horwath, a below-guidelines sentence is more than sufficient to punish, deter (both specifically and generally), and protect the public. Sentencing judges have reached that conclusion notwithstanding the extremely harsh guideline: in 2017, the median sentence for child pornography offenders who received downward departures was 63 months, for those who received departures and variances 60 months, and for those who received only variances 72 months. U.S.S.C., 2017 INTERACTIVE SOURCEBOOK OF FEDERAL SENTENCING STATISTICS, Tables 31A, 31B & 31C, https://isb.ussc.gov. These median sentences are impressive considering that most of these offenders were facing 60-month mandatory minimums.

In 2017, out of 1,855 child pornography cases prosecuted and sentenced in the federal courts, only 525 or 29%, were sentenced within guideline range. Forty-five

received above-guideline sentences. A whopping 1,239 or 68%, received below guidelines sentences. See U.S.S.C., 2017 INTERACTIVE SOURCEBOOK OF FEDERAL SENTENCING STATISTICS, Table 27. In reality, a sentence within the guideline range would raise the specter of sentencing disparity and an unreasonably harsh sentence.

### D. Specific Guideline Adjustments that Add Years to Mr. Horwath's Guideline Range Have Been Repudiated By the Sentencing Commission and Do Not Result in a Reasonable Sentencing Recommendation Under 18 U.S.C. section 3553(a)

Mr. Horwath's guideline range is driven by many adjustments that do not appropriately assess the sentencing factors the Court must consider under 18 U.S.C. § 3553(a). The guidelines in this case include specific offense characteristics that do not separate the serious offender from the less serious. According to the Sentencing Commission's publication Use of Guidelines and Specific Offense Characteristics report for Fiscal Year 2017, the number of images enhancement over 600 images applies in 74.7% of cases and the use of computer enhancement in 95.7% of cases. According to the report over 71% of cases involve the sadomasochistic image enhancement and 94.1% of the cases applied the under age 12 enhancement. U.S.S.C., Use of Guideline and Specific Offense Characteristics for Fiscal Year 2017 at 45-46 (FY 2017 data). Although this Court cannot do away with the archaic guidelines, it can certainly exercise its discretion under 18 U.S.C §3553(a) and fashion a sentence that is sufficient, but not greater than necessary, and one that avoids unwarranted disparity.

The sentence contemplated by the guidelines is excessive for many reasons, not least of which is that many of the sentencing "enhancements" do nothing to distinguish one case from another. A 2-level increase is applied simply for using a computer. (PSR, p. 8, ¶ 35.) Widespread as computer use is now, enhancing for use of a computer is a little like penalizing for speeding, but increasing that if you're using a car. The Sentencing Commission noted that the "use of a computer" adjustment was promulgated in 1996, when most offenders obtained illegal images in paper form. Report at 6, 138-39. In 1996,

using a computer to obtain illegal images indicated a more technologically sophisticated offender, but now, given pervasiveness of the Internet in modern life, the adjustment no longer indicates any increased seriousness of the offense.

A 5-level increase is applied for possessing greater than 600 images (PSR, p. 8, ¶ 36.) Whether Mr. Horwath possessed 600, or 600,000, the same 5-level enhancement would apply. When the child pornography guidelines were promulgated, Internet connections were far slower, and computer digital storage was far more limited. In 2019, with the ubiquity of high-band width Internet connections and inexpensive hard drives with terabytes of capacity, the amount of child pornography found on a computer is not a characteristic that should trigger such a harsh result.

The idea that these specific offense characteristics accurately reflect his offense behavior is absurd.  In Chapter 12 of its 2012 report, the Commission sets out Findings, Conclusions, and Recommendations to Congress. Among those recommendations is "that §2G2.2(b) be updated to account more meaningfully for the current spectrum of offense behavior regarding the nature of images, the volume of images, and other aspects of an offender's collecting behavior reflecting his culpability (e.g., the extent to which an offender catalogued his child pornography collection by topics such as age, gender, or type of sexual activity depicted; the duration of an offender's collecting behavior; the number of unique, as opposed to duplicate, images possessed by an offender)." (*Id.* at 323.)

As the Commission points out, "three of the six enhancements in §2G2.2 concern the content of offenders' collections: (1) a 2-level enhancement for possession of images of a pre-pubescent minor, (2) a 4-level enhancement for possession of sado-masochistic images or other depictions of violence, and (3) a 2- to 5-level enhancement for collections of a certain number of images (with increments ranging from ten or more images to 600 or more images. These three provisions (including the maximum 5-level enhancement for possession of 600 or more images) now apply to a majority of offenders,[fn] they add a significant 11-level cumulative enhancement based on the

content of the typical offender's collection. The current guideline thus does not adequately distinguish among most offenders regarding their culpability for their collecting behaviors. Furthermore, the 11-level cumulative enhancement, in addition to base offense levels of 18 or 22,[fn.] results in guideline ranges that are overly severe for some offenders in view of the nature of their collecting behavior. (Id. at 322-323, emphasis added.) These adjustments, which apply to the "typical" non-aggravated offender, increase Mr. Horwath's guideline range to 121-151 months.

### III.   DOWNWARD DEPARTURE BASED ON VOLUNTARY RESTITUTION

On April 21, 2023, the defendant voluntarily deposited $75,000 with the Clerk of the Court to hold for crediting towards his restitution obligation, other criminal monetary penalties, and special assessments. (ECF Doc. 74).  This was done in advance of the change of plea hearing on April 25, 2023.  The amount of restitution sought in this case is $53,000.  Voluntary restitution exhibiting extraordinary acceptance of responsibility can justify a downward departure. *United States v. Miller*, 991 F.2d 522 (9th Cir. 1993). This payment in advance of the change of plea hearing demonstrates extraordinary acceptance of responsibility and provides further support to vary or depart downward in this case.

### IV.   CONCLUSION

The Court's duty is to fashion a sentence that is "sufficient, but not greater than necessary," to serve the purposes of sentencing in this case.  18 U.S.C. § 3553(a). A custodial sentence of 60 months followed by a significant period of supervised release is sufficient and will more than capture the retributive and deterrent goals of sentencing.

DATED:  September 20, 2023        Respectfully submitted,

*s/ David W. Dratman*
DAVID W. DRATMAN
DAVID D. FISCHER
Attorneys for Defendant
TIMOTHY A. HORWATH